UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

IN THE MATTER OF THE CONSERVATORSHIP
OF DR. DAVID W. WHITE                                                                    PLAINTIFF

VS.                                                     CIVIL ACTION NO.: 3:06cv512-DPJ-JCS

MISSISSIPPI VALLEY TITLE
INSURANCE COMPANY, ET AL.                                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

There are two motions currently pending before the Court, a motion for summary judgment and a motion to strike, both filed by Defendant JP Morgan Chase Bank, N.A. ("Chase"). Plaintiff has responded in opposition to Chase's motion for summary judgment, but has failed to respond to the motion to strike, despite a show cause order. The Court, having considered the memoranda and submissions of the parties, along with the applicable law, concludes that Chase's motion for summary judgment should be granted and that the motion to strike is moot.

**I.      Facts/Procedural History**

In May of 2004, Dr. David W. White ("Dr. White") entered into an agreement with Trustmark National Bank ("Trustmark") for a revolving credit line of up to $40,000. In connection therewith, Dr. White executed a deed of trust in favor of Trustmark, granting it a security interest in his real property located at 714 Eminence Row, Jackson, Mississippi. Later, on October 13, 2004, White refinanced this indebtedness by executing a home equity line of credit agreement ("HELOC") with Chase's predecessor in interest, Bank One, N.A. ("Bank One"). Cedric Hull was employed by TransUnion Settlement Services and visited Dr. White's

1

house to finalize the credit agreement. Under the HELOC, Dr. White received a $70,000 credit limit.  In exchange, White executed another deed of trust, granting Chase a security interest in the real property subject to his previous loan.  As a part of the HELOC transaction, Dr. White submitted a disbursement request and authorization, asking that $40,149 be paid to Trustmark to fulfill his obligation under their original credit agreement.  Mr. Hull has submitted an affidavit stating that Dr. White did not exhibit any signs of being mentally impaired during their conversations on the date of execution and that on that date, Dr. White asked questions and understood that he was obtaining a $70,000 line of credit.

On October 20, 2004, White sent Chase an additional disbursement request, stating that all funds remaining from his line of credit, $29,840, should be deposited into a Trustmark checking account.  Dr. White subsequently defaulted on his HELOC obligations, and Chase began foreclosure proceedings against his property.

In July of 2005, Deborah Delgado ("Delgado") was appointed conservator of Dr. White's person and estate, and she filed the present action on September 11, 2006, in the Chancery Court of Hinds County, Mississippi, requesting a temporary restraining order, followed by a temporary and permanent injunction prohibiting Chase from foreclosing on Dr. White's property.  In support of her petition, Delgado argued that Dr. White "was in such physical and mental state at the time the credit was extended that he did not have the capacity to manage his affairs." Plaintiff's Petition, Complaint and/or Application for a Temporary Restraining Order at ¶ 9. Pursuant to Delgado's request, the chancery court issued a temporary restraining order prohibiting Chase's foreclosure on the property.

Chase removed the matter to this Court, claiming all nondiverse defendants were

improperly joined in the matter and, therefore, federal diversity jurisdiction was proper under 28 U.S.C. § 1332.[1]  In addition, Chase filed a counterclaim, requesting a declaratory judgment stating that it is entitled to proceed with non-judicial foreclosure on White's property and to obtain a deficiency judgment for any indebtedness remaining after the sale.  Chase has now moved for summary judgment.

## II.     Standard of Review

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th

---

[1] Plaintiff did not oppose removal, and Chase's notice appeared to be meritorious.  Thus, the Court has jurisdiction to hear this case.

Cir. 1994) (en banc).  Instead, when the movant shows the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).  A simple plea for a jury trial on the bare assertion that there are genuine issues of material fact is not a sufficient response to a motion for summary judgment.  *F.D.I.C. v. Brewer*, 823 F. Supp. 1341, 1347 (S.D. Miss. 1993) (citing *Washington v. Armstrong World Indus., Inc.*, 839 F.3d 1121, 1122–23 (5th Cir. 1988)).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

**III.   Analysis**

    A.   <u>Motion for Summary Judgment</u>

Under Mississippi law, "[a] properly executed deed carries with it a presumption that the grantor was mentally competent at the time of execution."  *In re Conservatorship of Moran*, 821 So. 2d 903, 906 (Miss. Ct. App. 2002) (citing *Richardson v. Langley*, 426 So. 2d 780, 786 (Miss. 1983)).  To overcome this presumption, the party seeking to have a deed set aside "must establish through clear and convincing evidence that the grantor lacked mental capacity" to execute the deed.  *Holmes v. O'Bryant*, 741 So. 2d 366, 372 (Miss. Ct. App. 1999). Furthermore,

> [i]t is not enough to show that at the time of the conveyance the grantor was suffering from a general mental weakness or condition; mental incapacity and insanity are not always permanent and a grantor may experience a lucid interval when he would

possess the mental capacity to understand the legal consequences of his actions. *In re Conservatorship of Moran*, 821 So. 2d at 906 (citing *Whitworth v. Kines*, 604 So. 2d 225, 228 (Miss. 1992)).

There are three methods of establishing mental incapacity to execute a deed: (1) proof that the grantor suffered from a total lack of capacity; (2) proof that the grantor suffered from weakness of intellect coupled with either grossly inadequate consideration or the existence of a confidential relationship; or (3) proof that the grantor suffered from "permanent insanity up to and after the date of execution." *See Smith v. Smith*, 574 So. 2d 644, 653 (Miss. 1990). Although the pleadings in this case are somewhat vague, it appears that Plaintiff is attempting to set aside the HELOC and deed of trust due to total lack of capacity or, alternatively, weakness of intellect at the time of execution of the deed.[2] The Court will address each of these arguments in turn.

       1.    *Total Lack of Capacity*

To execute a deed, a grantor must have "sufficient mental capacity to understand in a reasonable manner the nature of the transaction in which he [is] engaged and its consequences and effect upon his rights and interests." *Moore v. Stone*, 208 So. 2d 585, 586 (Miss. 1968); *see also Smith*, 574 So. 2d at 651. "[W]hen dealing with total lack of capacity, the critical date to be considered is the date of execution." *Smith*, 574 So. 2d at 653; *see also Texaco, Inc. v. Musgrove*, 175 So. 2d 490, 496 (Miss. 1965) ("This Court has held that the crucial time when

---

[2] Plaintiff's submissions do not appear to make an insanity argument, and Plaintiff has not presented any proof of insanity, much less clear and convincing proof. Therefore, the Court will not consider the merits of such a claim in the present case.

evidence of mental capacity attains its maximum and controlling relevancy is at the time of execution of the document in question."); *In re Conservatorship of Cook*, 937 So. 2d 467, 470 (Miss. Ct. App. 2006) ("Mississippi law requires that the party seeking to set aside a deed prove that the grantor lacked mental capacity at the time of execution. . . . This evidence of mental incapacity must be clear and convincing and not simply that the grantor was suffering from general weakness.") (internal citations omitted); *In re Conservatorship of Moran*, 821 So. 2d at 905 ("It must be shown that, at the moment of execution, the grantor lacked the required mental capacity or was permanently insane.").

Even in cases in which the grantor has been diagnosed with certain mental disorders, such as senile dementia, specific evidence of diminished capacity on the actual date of execution of the document in question is required. For example, in *Holmes v. O'Bryant*, the Mississippi Court of Appeals stated that

> [t]he mere notation that [a grantor] was suffering from senile dementia of the Alzheimer's type was not conclusive that on [the date of execution], [the grantor] did not understand or appreciate the nature of his act, the natural objects or persons of his bounty and their relation to him, and was incapable of determining how he desired to devise and bequeath his property.

741 So. 2d at 374. The *Holmes* court further noted that the "events related . . . were general in nature and were not date specific to show [the grantor's] mental capacity on" the date of execution. *Id.* In another case, *In re Conservatorship of Cook*, the Mississippi Court of Appeals again upheld a trial court's finding of insufficient evidence of mental incapacity, reasoning that although evidence was obtained from the grantor's physician that the grantor "suffered from dementia and did not always possess the mental capacity to execute legal documents, . . . [n]one of [the grantor's] medical advisors observed her on the day of execution of the relevant

documents and could not testify to her mental state on that day." 937 So. 2d at 470; *see also In re Conservatorship of Moran*, 821 So. 2d at 906 (holding no manifest error in a trial court's finding of no diminished mental capacity when there was testimony from the grantor's physician that he was confused and agitated during medical visits, but there was no evidence from any source "that would establish that [the grantor] was mentally incompetent on the date he executed the deed").

Here, Plaintiff presented some evidence that Dr. White was suffering from dementia in 2003 and beyond. Those statements were at best conclusory and speculative as to the extent of impairment. *See TIG Ins. Co.*, 276 F.3d at 759. Moreover, the statements provided no specific evidence regarding Dr. White's mental state on October 13, 2004, the date he executed the HELOC and deed of trust. Accordingly, there is a total failure of proof on the essential issue of Dr. White's understanding or appreciation of the nature of his actions on the relevant date. *Holmes*, 741 So. 2d at 374. Absent clear and convincing evidence of Dr. White's total lack of capacity on the date of execution, Plaintiff cannot rebut the presumption that White was mentally competent to execute the deed.[3]

   2.   *Weakness of Intellect*

Relief may also be provided "in certain cases involving lack of capacity, where the condition does not rise to permanent insanity or total lack of capacity." *Smith*, 574 So. 2d at 653. The Mississippi Supreme Court has explained that Mississippi law

---

[3] In addition to this presumption, Chase submitted the affidavit of Cedric Hull, which stated that Dr. White did not exhibit any signs of being mentally impaired during their conversations on the date of execution and that on that date, Dr. White asked questions and understood that he was obtaining a $70,000 line of credit.

> traditionally [makes] a distinction between "weakness of intellect" and a total lack of capacity to execute a deed. Such a "weakness of intellect" when coupled with another factor, such as grossly inadequate consideration, or the existence of a confidential relationship may be sufficient to warrant the granting of equitable relief. Absent such a confidential relation, or grossly inadequate consideration, a "weakness of intellect" in and of itself, which does not rise to the standard of a total lack of capacity to execute a deed is an insufficient basis upon which to set aside a deed.

*Richardson*, 426 So. 2d at 783. When dealing with weakness of intellect, the date of execution is the critical time for determining mental capacity, and "the 'before and after' rule, applied in cases of permanent insanity, [does] not apply." *Smith*, 574 So. 2d at 653.

Here again, Plaintiff fails to provide adequate proof to establish incapacity through weakness of intellect. First, as discussed above, Plaintiff has not produced any evidence regarding Dr. White's intellect or mental capacity on the date of execution, and evidence of his condition before and/or after execution is insufficient to prove weakness of intellect. Next, Plaintiff provides no support for her contention that there was grossly inadequate consideration for the deed of trust. Chase has propounded evidence that it extended a $70,000 line of credit to Dr. White as a part of the HELOC transaction, which was paid out through two disbursements: one for $40,149 to Trustmark to fulfill Dr. White's original credit obligation, and one for $29,840, which was deposited into Dr. White's Trustmark checking account.

Finally, Plaintiff mistakes the relevant confidential relationship for proving weakness of intellect. Plaintiff implies that a confidential relationship existed between Dr. White and David Jones, Dr. White's caretaker at the time of execution, or between Cedric Hull and David Jones. The cases reviewed by the Court establish, however, that it is the relationship between the parties to the deed that is critical in determining whether a confidential relationship exists for weakness of intellect purposes. *See, e.g., Whitworth*, 604 So. 2d at 230 (upholding trial court finding of no

8

confidential relationship and explaining that although there was a confidential relationship between the grantor and her brother, one of the parties attacking her mental capacity, there was no confidential relationship between the grantor and the beneficiary of the challenged deed); *In re Conservatorship of Moran*, 821 So. 2d at 907 (upholding trial court's finding of no confidential relationship which explained that although grantor was eventually dependent upon his granddaughter for care, there was no dependency upon and no confidential relationship with his daughter, the beneficiary of the suspect deed). Plaintiff has not directed the Court's attention to any cases holding that a relationship other than the one shared by the parties to the challenged deed is relevant in a weakness of intellect analysis. Because Plaintiff has provided no proof of a confidential relationship between Chase and Dr. White, Plaintiff has not established the confidential relationship necessary to support his weakness of intellect claim.

  B. <u>Motion to Strike</u>

  Although portions of Chase's motion to strike are meritorious, and could be granted, the Court concludes that even considering the Plaintiff's submissions in their entirety, the Defendant's motion for summary judgment should be granted. Consequently, a specific ruling on Chase's motion to strike is unnecessary to the Court's determination in this case.

**III.** **Conclusion**

  As the party seeking to set aside a deed, Plaintiff bears the burden of proving through clear and convincing evidence that at the time of execution, Dr. White lacked the mental capacity necessary to execute the HELOC and deed of trust. Plaintiff, however, has failed to offer any competent evidence to create a question of fact as to the elements necessary to prevail on either a total lack of capacity or weakness of intellect theory of mental incompetence. The Court has

considered and rejected the remaining arguments raised in Plaintiff's submissions.  Accordingly, the Court finds that Defendant's motion for summary judgment should be granted.

The Court reserves its ruling on the Defendant's request for a default judgment authorizing it to conduct a non-judicial foreclosure and for a deficiency judgment for any amounts remaining due after the sale.  Defendant is instructed to further brief this issue, specifically detailing the reasons it believes it is entitled to such relief **at this time**.  Plaintiff will be given 14 days from the date of Defendant's submission in which to respond.

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is granted.

**SO ORDERED AND ADJUDGED** this the 11th day of October, 2007.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE